# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JAMES CASTRO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:20-cv-00753 |
| | ) |
| FIRE DOOR SOLUTIONS, LLC, d/b/a | ) |
| LIFE SAFETY COMPLIANCE | ) |
| SOLUTIONS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court in this breach of employment contract case is Defendant Fire Door Solutions, LLC's ("FDS") Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss the First Amended Complaint and Enforce the Parties' Forum Selection Clause. (Doc. No. 12; see also Doc. No. 13). Plaintiff James Castro filed a response in opposition (Doc. No. 14) and FDS replied (Doc. No. 15). For the following reasons, FDS's motion will be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Castro was employed as the Chief Executive Officer of Premier Barrier Inc. ("Premier Barrier"), a Tennessee company "engaged in the business of providing life safety and fire safety inspection, repair, and reporting to healthcare facilities located throughout the United States." (Doc. No. 8 ¶ 11). FDS, a Kansas company, purchased Premier Barrier in July 2018. (Id. ¶¶ 13–16). In connection with that sale, FDS and Castro negotiated and entered into an employment agreement (Doc. No. 8-1) (hereinafter "Employment Agreement"). (Doc. No. 8 ¶¶ 16–34).

---

[1] The Court draws the facts in this section from the First Amended Complaint (Doc. No. 8) and the attached exhibits, as well as the court documents attached to the Notice of Removal (see Doc. No. 1).

The two-page Employment Agreement sets forth the terms and conditions of Castro's employment, states that he will be employed as the Executive Vice-President of FDS, and provides that he "will have an unconditional guaranteed annual salary of $200,000 for two years starting on the purchase transaction closing date," subject to some limited conditions. (Doc. No. 8-1 at 1; see also Doc. No. 8 ¶¶ 35–37). The Employment Agreement also states that it is "conditional pending . . . [Castro] signing FDS's Noncompete and Confidentiality Agreement" (Doc. No. 8-1 at 1), which Castro eventually did on July 19, 2018 (see Doc. No. 1-2 at 33–39). And, as relevant to this case, the Employment Agreement further provides that:

> 5) Upon an involuntary removal from FDS, you will have an unconditional salary severance package equal to the length of the FDS Noncompete and Confidentiality Agreement. If you and FDS agree to reduce the time period of the two-year Noncompete and Confidentiality Agreement the unconditional salary severance package will be reduced by the same time period.
>
> 6) Upon a voluntary removal from FDS, the unconditional salary severance will be cancelled.

(Doc. No. 8-1 at 1). Castro signed the Employment Agreement on July 6, 2018. (Id. at 2).

The Employment Agreement does not contain a choice-of-law provision or a forum selection clause. However, the Restrictive Covenant and Confidentiality Agreement (hereinafter "RCC Agreement") contains the following language:

> 4. Enforcement. The parties hereto agree that their rights hereunder are special and unique and that any violation of the Restrictive Covenants herein will result in immediate, irreparable harm and injury to the Company that would not be adequately compensated by money damages, and each grants the other the right to specifically enforce (including injunctive relief or other equitable relief where appropriate) the terms of this Agreement in the District Court of Johnson County, Kansas, or in the United States District Court located in Kansas City, Kansas. The parties consent to such exclusive jurisdiction and agree that venue will be proper in such courts and waive any objections. The choice of forum set forth in this Section shall not be deemed to preclude the enforcement of any action under this Agreement in any other jurisdiction. This Agreement is governed by the laws of the State of Kansas. . . .

(Doc. No. 1-2 at 35). The RCC Agreement also expressly states that it "is not . . . a contract of employment," and that it "embodies the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein" and "supersedes all prior agreements and understandings (whether oral or written) between the parties with respect to such subject matter." (Id. at 37).

The parties agree that Castro worked for FDS from July 2018 to July 2020 (Doc. No. 8 ¶¶ 45, 51–54), but they vehemently dispute why Castro's employment ended. Castro alleges that FDS terminated him without cause and therefore owes his severance under the Employment Agreement (id. ¶¶ 51–56), whereas FDS asserts that Castro voluntarily resigned and is owed nothing (Doc. No. 6-1 ¶ 14). To date, FDS has not paid Castro any severance. (Doc. No. 8 ¶ 74).

As a result, Castro sued FDS in Tennessee State court on July 30, 2020, alleging that FDS breached the Employment Agreement by not paying him the required severance payment. (Doc. No. 1-2). The Tennessee state-court complaint also sought a declaratory judgment that Castro had no further obligations under the RCC Agreement, and it further alleged that FDS was unjustly enriched for requiring Castro to comply with the RCC Agreement without paying him severance. (Id.). On September 9, 2020, FDS removed the action to this Court under 28 U.S.C. §§ 1441(b) and 1332 based on the parties' diversity of citizenship. (Doc. No. 1). On that same day, FDS also filed a lawsuit against Castro in Kansas state court alleging that he breached the RCC Agreement. (See Doc. No. 6-1).

On September 21, 2020, Castro amended the Complaint in this case to include a single breach of contract claim based on FDS's alleged failure to pay him severance under the Employment Agreement. (Doc. No. 8 ¶¶ 69–79). In response, FDS filed the instant motion to

dismiss the First Amended Complaint and enforce the parties' forum selection clause, which, according to FDS, required Castro to bring his lawsuit in Kansas.

## II.  APPLICATION OF LAW

Where a case is improperly filed in contravention of a forum selection clause, there are various ways a court can dismiss the case or transfer it to another forum. Scepter, Inc. v. Nolan Transp. Grp., LLC, 352 F. Supp. 3d 825, 830 (M.D. Tenn. 2018) (collecting cases). Here, FDS argues that the Court should enforce the parties' forum selection clause and dismiss this action under Rule 12(b)(6) because Castro agreed to the exclusive jurisdiction of Kansas courts when he signed the Employment Agreement. (Doc. No. 13 at 8). Alternatively, FDS seeks dismissal pursuant to the doctrine of *forum non conveniens* or the first-to-file rule. The Court will address each of these arguments below.

### A. Rule 12(b)(6)

FDS first argues that "[t]he parties' valid, mandatory, forum selection clause required [Castro] to file his lawsuit in Kansas – and a Rule 12 dismissal is an appropriate enforcement mechanism." (Doc. No. 12 at 1). In response, Castro argues that this case should not be dismissed under Rule 12(b)(6) because the RCC Agreement, "by its terms, does not apply to the Employment Agreement." (Doc. No. 14 at 2).

The parties' arguments make clear that the disputed issue before the Court is not whether the forum selection clause in the RCC Agreement is enforceable, but rather, whether it applies to Castro's claim against FDS for breach of the Employment Agreement. Although the Court is unaware of any Sixth Circuit case deciding what law governs the interpretation of a forum selection clause in this procedural posture, the Court does not need to engage in an extensive conflict-of-laws analysis to resolve this issue because federal common law, Kansas law (if the RCC Agreement's choice-of-law provision applies), and Tennessee law (if the RCC Agreement's

4

choice-of-law provision does not apply) all provide that if the language of a contract is clear and unambiguous, the Court should interpret the contract according to its plain meaning. See Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556 (6th Cir. 1998) (en banc); Maggart v. Almany Realtors Inc., 259 S.W.3d 700, 704 (Tenn. 2008); Anderson v. Dillard's, Inc., 153 P.3d 550, 554 (Kan. 2007).

Here, the forum selection clause appears solely in the RCC Agreement. And that clause unambiguously states that "[t]he parties hereto agree . . . that any violation of the *Restrictive Covenants* herein will result in immediate, irreparable harm and injury to [FDS] . . . , and each grants the other the right to specifically enforce . . . the terms of *this Agreement* in the District Court of Johnson County, Kansas, or in the United States District Court located in Kansas City, Kansas." (Doc. No. 1-2 at 35) (emphasis added). The term "Restrictive Covenants" is defined in Section 1 of the RCC Agreement, and the term "Agreement" refers to the RCC Agreement itself. (See id. at 33) (stating that "THIS RESTRICTIVE COVENANT AND CONFIDENTIALITY AGREEMENT (the 'Agreement') is entered into by and between" FDS and Castro)). Notably, however, neither of those terms nor the forum selection clause overtly mentions the Employment Agreement, nor does the Employment Agreement refer to any forum selection clause.

FDS argues that the RCC Agreement and Employment Agreement consist of a single agreement between the parties, and therefore, the forum selection clause applies to both. (Doc. No. 13 at 7). Sure, the Employment Agreement was conditioned on Castro signing the RCC Agreement, and the RCC Agreement states: "Note see job offer for additional legal severance package." (See Doc. Nos. 8-1 at 1; 1-2 at 33). But contrary to FDS's contention, those passing references do not mean that the terms of the Employment Agreement and RCC Agreement are "expressly incorporated" in the other. (See Doc. No. 13 at 7). To conclude otherwise would render

5

meaningless the RCC Agreement's integration provision, which states that "[t]his Agreement embodies the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein[.]" (Doc. No. 1-2 at 37). It would also ignore the RCC Agreement's provision that "[t]his Agreement is not, and shall not be construed to create, a contract of employment[.]"[2] (Id.).

Thus, given the clear and unambiguous language in both the RCC Agreement and Employment Agreement, the Court concludes that the forum selection clause applies only to claims involving a breach of the Restrictive Covenants or the RCC Agreement. See Raykovitz v. Elec. Builders, Inc., No. CV 119-137, 2020 WL 4927479, *6–*7 (S.D. Ga. Aug. 21, 2020) (holding that a forum selection clause in a restrictive covenant agreement did not apply to a separate employment agreement between the parties). And because the First Amended Complaint alleges that FDS breached the Employment Agreement, not the RCC Agreement, the Court will not dismiss this case based on the RCC Agreement's forum selection clause.[3]

B.  *Forum non conveniens*

As an alternative to dismissal under Rule 12(b)(6), FDS argues that the Court should enforce the RCC Agreement's forum selection clause through the doctrine of *forum non conveniens*. "Under the common law doctrine of *forum non conveniens*, a federal trial court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that

---

[2] The Court does not need to consider parol evidence because the agreements are unambiguous. However, as further evidence that the agreements are separate, Castro signed the Employment Agreement on July 6, 2018, (Doc. No. 8-1 at 2), but did not sign the RCC Agreement until nearly two weeks later on July 19, 2018, (Doc. No. 1-2 at 39).

[3] Given this conclusion, the Court does not need to decide whether the RCC Agreement's forum selection clause is mandatory or permissive. See Scepter, 352 F. Supp. 3d at 830–31.

6

Case 3:20-cv-00753   Document 23   Filed 06/07/21   Page 6 of 10 PageID #: 238

the action should be tried in another forum." Associação Brasileira de Medicina de Grupo v. Stryker Corp., 891 F.3d 615, 619 (6th Cir. 2018) (citations and internal quotation marks omitted). "A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 432, 430 (2007). However, this doctrine "generally applies when the alternative forum is in a foreign country [or state court], rather than in a different district within the federal system." Jones v. IPX Int'l Equatorial Guinea, SA, 920 F.3d 1085, 1090 (6th Cir. 2019) (citing Sinochem, 549 U.S. at 430). "[F]or the subset of cases in which the transferee forum is within the federal court system . . . Congress has replaced the traditional remedy of outright dismissal with transfer" by enacting 28 U.S.C. § 1404(a).[4] Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 60 (2013).

FDS argues that this case should be dismissed or transferred to Kansas state court or the United States District Court for the District of Kansas,[5] meaning its request can be characterized as either a *forum non conveniens* motion or a § 1404(a) motion. But regardless of how the Court characterizes FDS's request, FDS has not "carrie[d] the burden of establishing an adequate alternative forum and showing that [Castro's] chosen forum is unnecessarily burdensome based on public and private interests." See Hefferan v. Ethicon Endo-Surgery Inc., 828 F.3d 488, 492

---

[4] Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

[5] FDS later argues that "transfer under § 1404(a) is not an option" because it filed its own lawsuit in Kansas state court. (Doc. No. 13 at 7). But, in fact, the opposite is true because the Kansas lawsuit has since been removed to federal court. See Fire Door Solutions, LLC v. Castro, No. 2:20-cv-02536-JWB-GEB (D. Kan. 2020).

7

(6th Cir. 2016). Indeed, FDS does not even argue that this Court is an inconvenient forum. Instead, FDS's sole argument in support of its position is that the Court should enforce the RCC Agreement's forum selection clause here. (Doc. No. 13 at 5, 7–8). Because the Court already concluded that the RCC Agreement's forum selection clause does not apply to Castro's claims in this case, see Section III.A *supra*, the Court will not enforce that clause by dismissing or transferring this case under § 1404(a) or *forum non conveniens*.

### C. First-to-File Rule

Last, FDS contends that the Court should dismiss this case under the first-to-file rule because FDS's "Kansas state court lawsuit was the first properly filed lawsuit between the parties." (Doc. No. 13 at 8). The first-to-file rule "provides that when actions involving nearly identical parties and issues have been filed in two different [federal] district courts, the court in which the first suit was filed should generally proceed to judgment." Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc., 16 F. App'x 433, 437 (6th Cir. 2001) (citation and internal quotation marks omitted). "While there is a paucity of Sixth Circuit case law explaining how to apply the first-to-file rule, courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." Baatz v. Columbia Gas Transmission, LLC, 814 F.3d 785, 789 (6th Cir. 2016) (citation omitted).

Castro filed the original complaint on July 30, 2020 and served that complaint on FDS on August 5, 2020. (Doc. Nos. 1-2; 1-4 at 2). FDS then filed its complaint in Kansas state court on September 9, 2020. (Doc. No. 6-1). Although Castro subsequently filed an amended complaint eliminating the claims involving the RCC Agreement, the amendment date is irrelevant because

8

"the date that an original complaint is filed controls."[6] Zide Sport Shop, 16 F. App'x at 437 (citing Plating Res., Inc. v. UTI Corp., 47 F. Supp. 2d 899, 904 (N.D. Ohio 1999)). Accordingly, the chronology of events suggests that Castro, not FDS, is entitled to the benefit of the first-to-file rule.

Regarding the second and third factors, the Court finds that the parties in both cases are the same but the issues in those cases do not substantially overlap. This lawsuit involves FDS's alleged breach of the Employment Agreement by not paying Castro severance, whereas FDS's Kansas lawsuit involves Castro's alleged breach of the RCC Agreement. Although there may be some overlapping issues, witnesses, and evidence in those cases, the Court does not find that the cases "have such an identity that a determination in one action leaves little or nothing to be determined in the other." Baatz, 814 F.3d at 791 (citing Smith v. SEC, 129 F.3d 356, 361 (6th Cir. 1997)). Thus, the similarity of the issues factor also weighs in favor of Castro, not FDS.

Last, this case is easily distinguishable from Zide Sport Shop, a Sixth Circuit case affirming the district court's decision to dismiss a complaint that was otherwise eligible for the first-to-file rule. 16 F. App'x at 438. Unlike in Zide Sport Shop, there is no evidence here that Castro filed the original complaint in bad faith, engaged in procedural fencing, or misled FDS in any way. Id. Accordingly, the Court concludes that the first-to-file rule does not serve as a basis to dismiss the First Amended Complaint in this case.[7]

---

[6] FDS's Kansas lawsuit was removed to federal court on October 26, 2020, but that date is irrelevant because "the date the removed action was filed in state court is the controlling date to determine which of two actions has priority" under the first-to-file rule. Innovation Ventures, LLC v. Custom Nutrition Labs., LLC, 534 F. Supp. 2d 754, 756 (E.D. Mich. 2008); see also Fire Door Solutions, LLC v. Castro, No. 2:20-cv-02536-JWB-GEB (D. Kan. 2020), Doc. No. 1.

[7] The Court expresses no opinion about whether *Castro* is in fact entitled to the first-to-file rule.

9

### III. CONCLUSION

For the foregoing reasons, FDS's Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss the First Amended Complaint and Enforce the Parties' Forum Selection Clause (Doc. No. 12) will be denied.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR
CHIEF UNITED STATES DISTRICT JUDGE