UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| JAMES CASTRO, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 3:20-cv-00753 |
| FIRE DOOR SOLUTIONS, LLC, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a breach of contract case between James Castro and his former employer, Fire Door Solutions ("FDS"). (Doc. No. 8). Mr. Castro alleges FDS violated his perpetual, at will employment agreement by refusing to pay him severance after his "involuntary removal" from FDS. (Id. ¶ 55). FDS argues Mr. Castro was ineligible for severance because his departure was "voluntary." (Doc. No. 36 at 2). On that basis, FDS has moved for summary judgment. (Doc. No. 35). The Court will deny the motion because it finds Mr. Castro's employment was not limited to any specified period of time and his departure from FDS was involuntary as a matter of law. Because this finding indicates summary judgment may be warranted in Mr. Castro's favor, the Court will order FDS to file a brief raising any remaining arguments it has to the contrary.[1]

## I. BACKGROUND

Mr. Castro has "been in the fire stopping business since 1998." (Doc. No. 45 ¶ 3). He previously served as CEO of Premier Barrier Management ("PBM"), which was one of the "largest firestopping companies in the southeast." (Id. ¶¶ 1, 4). There, Mr. Castro did not have a

---

[1] Mr. Castro has not moved for summary judgment, and the Sixth Circuit "discourage[s]" courts from entering summary judgment "sua sponte" without giving the adversely affected party notice and an opportunity to respond. Beaty v. United States, 937 F.2d 288, 291 (6th Cir. 1991).

noncompete agreement. (Id. ¶ 2).

On July 18, 2018, FDS acquired PBM. (Id. ¶ 5). Mr. Castro agreed to work for FDS as its Executive Vice President. (Id. ¶¶ 7, 10–11; Doc. No. 35-1 at 208). His FDS contract contained "no specified length of employment" and provided a $200,000 annual salary. (Doc. No. 35-1 at 208, 209). The salary was "guaranteed" for two years, such that Mr. Castro's spouse would receive payments even "[i]n the case of [his] death,"[2] so long as Mr. Castro transferred PBM contracts to FDS and attempted, in good faith, to maintain their revenue levels. (Id. at 208).

Mr. Castro's employment contract required him to sign a covenant precluding him from competing with FDS for two years if he ever left the company. (See Doc. No. 45 ¶¶ 12, 14). If his departure was "involuntary," he would receive an "unconditional salary severance package" during the noncompete period. (Doc. No. 35-1 at 208). If his departure was "voluntary," then "the unconditional salary severance [would] be cancelled." (Id.). The contract did not define the terms "voluntary" or "involuntary." (See id.). Mr. Castro began working for FDS on July 19, 2018. (Doc. No. 40 ¶ 1).

Approximately two years later, on June 19, 2020, FDS told Mr. Castro it was going to terminate his position as Executive Vice President on July 19, 2020. (Doc. No. 35-1 at 240). On June 24, 2020, FDS offered to employ Mr. Castro as "HCA National Account Manager" beginning on July 20, 2020. (Id. at 233). The position would have paid $65,000 per year; nearly 70% less than Mr. Castro's prior annual salary. (See id. at 208, 233). Mr. Castro rejected the offer. (Doc. No. 40 ¶ 7). FDS modified its proposal slightly, without changing the job title or the salary, and reextended its offer on July 14, 2020. (Doc. No. 35-1 at 235). Mr. Castro did not accept, and his

---

[2] Mr. Castro is a stem cell transplant patient. (Doc. No. 35-1 at 208).

employment ended on July 19, 2020.  (Id. at 240; Doc. No. 40 ¶¶ 9–10).  FDS did not pay him severance.  (Doc. No. 31 at 25).

Eleven days later, Mr. Castro sued FDS in Tennessee state court.  (Doc. No. 1-2 at 6).  FDS removed the action to this Court on September 2, 2020.  (Doc. No. 1).  Mr. Castro filed an amended complaint on September 21, 2020, which alleges breach of contract, seeks a severance payment, and requests various forms of damages.  (Doc. No. 8 at 11, 13–14).  The parties completed written discovery and depositions.  (Doc. No. 18).  FDS moved for summary judgment on September 15, 2021.  (Doc. No. 35).  The motion has been fully briefed.  (Doc. Nos. 35, 36, 39, 44).

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of fact exists where a jury could "reasonably" find for the "non-moving party."  Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation and quotation omitted).  At the summary judgment stage, the Court must view the record in the light most favorable to the non-moving party, accept that party's evidence as true, and draw all reasonable inferences in its favor.[3]  Id.

Summary judgment is often the "appropriate procedural device" for resolving "matters of contract interpretation" because such matters are "legal in nature."  Highland Mining Co. v. United Mine Workers of Am., 105 F. App'x 728, 730 (6th Cir. 2004).  A contractual dispute only requires submission to a jury if the contract "is subject to more than one reasonable interpretation."  City

---

[3] Although FDS is the original movant, the Court considers FDS the non-moving party, entitled to reasonable inferences in its favor, for the purposes of its finding that Mr. Castro's departure was involuntary as a matter of law.  See Street v. Corr. Corp. of Am., 102 F.3d 810, 816–17 (6th Cir. 1996); see also Salens v. Tubbs, 292 F. App'x 438, 445 (6th Cir. 2008) (Moore, J., dissenting).  This is because Mr. Castro would have the burden of proof and persuasion on the issue of involuntariness at trial.

3

of Wyandotte v. Consol. Rail Corp., 262 F.3d 581, 586 (6th Cir. 2001). When evaluating whether a "disputed term" is subject to multiple interpretations where the contract "provides little guidance," courts may consider decisions that have "previously interpreted the term." Id.

## III. ANALYSIS

"In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 291 (Tenn. 2011).[4] FDS argues that summary judgment is appropriate because Mr. Castro "cannot establish a breach" of his contract. (Doc. No. 36 at 10). More specifically, FDS contends its failure to pay Mr. Castro severance did not violate his employment agreement because his departure from FDS "was voluntary." (Id.). The Court disagrees.

There was no specific duration of time for Mr. Castro's employment (Doc. No. 35-1 at 208–209), so his departure from FDS was involuntary as a matter of law. Where an "employee did not agree to modify his preexisting employment contract and his employer would not continue to employ him under that contract, the employee did not voluntarily resign his position, but was rather terminated by his employer." Lewis v. MedAssets Net Revenue Sys., LLC, No. 3:11-CV-0837, 2012 WL 3061855, at *10 (M.D. Tenn. July 26, 2012); see also Teter v. Republic Parking Sys., Inc., 181 S.W.3d 330, 338 (Tenn. 2005) ("[B]ecause Mr. Teter did not agree to modify his existing contract and RPS would not continue to employ him under the old contract . . . Mr. Teter did not voluntarily resign his position."). FDS does not dispute that Mr. Castro had a preexisting

---

[4] Mr. Castro's "contract appears to have been executed and performed in Tennessee, indicating that Tennessee law should apply." Ballard v. St. Paul Fire & Marine Ins. Co., 1995 WL 699617, at *2 (6th Cir. Nov. 27, 1995). The contract provided that Mr. Castro would "office out of" Nashville, Tennessee. (Doc. No. 35-1 at 209). And FDS admits Mr. Castro resided in Tennessee "at all times relevant" to this case. (Doc. No. 31 ¶ 1).

4

employment contract with FDS that he did not agree to modify. (Doc. No. 36 at 2; Doc. No. 40 ¶¶ 1–2, 6–9; Doc. No. 45 ¶¶ 9–11). It also does not dispute that FDS would not continue to employ Mr. Castro under his preexisting contract. (Doc. No. 36 at 2; see also Doc. No. 40 ¶ 10). Therefore, under Tennessee law, Mr. Castro's removal from FDS was involuntary. Lewis, 2012 WL 3061855, at *10; Teter, 181 S.W.3d at 338.

FDS' argument that Mr. Castro's departure was voluntary is based on its attempts to renegotiate the terms of Mr. Castro's employment near the end of his tenure, perhaps on the mistaken belief that Mr. Castro's employment was for only two years. (See Doc. No. 36 at 8–10). FDS notes that it twice offered Mr. Castro a different job which would have started the day after FDS terminated his position. (Id. at 8). It points out that if Mr. Castro had accepted either of its offers, "he would have continued to work at [FDS] without a gap." (Id.). FDS contends Mr. Castro's decision to reject those offers renders his departure voluntary. (Id. at 8–10).

The decision in Teter squarely contradicts FDS' argument. That decision concerned Eric Teter's claim that his former employer, Republic Parking System ("RPS"), breached his employment contract. Teter, 181 S.W.3d at 333. The contract, like Mr. Castro's, "was for an indefinite period of time." Id. at 337. It also provided for severance pay upon "involuntary termination." Id. RPS offered Mr. Teter a new contract with terms "less favorable" to him, and it was clear that "if Mr. Teter did not agree to a new, modified contract, he would be terminated." Id. at 335, 338. Mr. Teter nevertheless rejected RPS' new contract proposal, and the parties' employment relationship ended. Id. at 335. The Supreme Court of Tennessee held that "Mr. Teter did not voluntarily resign his position."[5] Id. at 338. Hence, Teter defeats FDS' argument that Mr.

---

[5] As the Teter opinion explained: "Modification of an existing contract cannot be accomplished by the unilateral action of one of the parties. There must be the same mutuality of assent and meeting

5

Castro's departure was voluntary merely because he rejected FDS' offers to employ him under new contracts, especially because the new contracts were less favorable than his existing contract. See id. at 335.

In sum: FDS is not entitled to summary judgment because Mr. Castro's departure from FDS was involuntary based on Tennessee law and the undisputed facts of this case.

## IV. CONCLUSION

FDS' Motion for Summary Judgment (Doc. No. 35) is **DENIED**. The Court further orders the following:

(1) The parties shall make a good faith effort to resolve any disputes remaining between them in this case and in their related case (Case No. 3:21-cv-00622) under the supervision of a mediator within **45 days** of the entry of this Order.

(2) The parties shall file a notice on the record reporting the name of their mediator and the dates on which their mediation shall take place within **10 days** of the entry of this Order.

(3) If the parties do not resolve their remaining disputes through mediation, in light of the Court's finding that Mr. Castro's departure was involuntary as a matter of law, FDS is **DIRECTED** to file, within **10 days** of the parties' final day of mediation, a brief that (a) sets forth FDS' arguments against the Court entering summary judgment in Mr. Castro's favor and (b) identifies all evidence relevant to those arguments.[6]

---

of minds as required to make a contract. New negotiations cannot affect a completed contract unless they result in a new agreement." Teter, 181 S.W.3d at 338 (citation and quotation omitted).

[6] Sua sponte summary judgment is proper "so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." Shelby Cty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund, 203 F.3d 926, 931 (6th Cir. 2000) (quoting Salehpour v. University of Tennessee, 159 F.3d 199, 204 (6th Cir.1998)). And the "clearly established rule in this circuit is that a district court must afford the party against whom sua sponte summary judgment

6

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

is to be entered ten-days notice." <u>Advanced Concrete Tools, Inc. v. Beach</u>, 525 F. App'x 317, 320 (6th Cir. 2013) (quoting <u>Yashon v. Gregory</u>, 737 F.2d 547, 552 (6th Cir.1984)).